

# HELEN F. DALTON & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415

Tel. (718) 263-9591 Fax. (718) 263-9598

May 9, 2022

<u>**Via ECF**</u>
The Honorable District Judge John P. Cronan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: **Penate v. Leo's Bagels Hanover Square LLC, *et. al.***
   **Civil Docket No.: 21-cv-10934 (JPC)**

Dear Judge Cronan:

    Our office represents Gustavo Adolfo Penate ("Penate" or "Plaintiff") and we submit this motion jointly with counsel for Leo's Bagels Hanover Square LLC d/b/a Leo's Bagels (hereinafter, "Leo's Bagels"), and Adam Pomerantz, and Mahfujur Rahman, as individuals (collectively, the "Defendants") requesting the Court's approval of the parties' Settlement Agreement. The terms of the parties' settlement agreement ("Settlement Agreement"), attached hereto as **Exhibit 1**, were reached following a Court-annexed mediation on March 29, 2022.

    The parties submit this motion in support of their position that the Settlement Agreement is fair and reasonable and does not raise any of the concerns cited in *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199 (2d Cir. 2015). The parties address the monetary and non-monetary terms, as well as Plaintiffs' counsel's requested attorneys' fees, and respectfully request that the Court approve the Settlement Agreement and dismiss this case with prejudice.

### I. <u>The Monetary Terms of the Settlement Agreement are Fair and Reasonable</u>

#### a. The Settlement Amount

    Plaintiffs and Defendants agreed to resolve all claims asserted in this action, including Plaintiffs' counsel's attorneys' fees (which are addressed below), for the amount of $17,500.00, payable within 30 days of Court approval of the Settlement Agreement.

### b. Plaintiffs' Position

Plaintiff brought this action against Defendants alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Laws ("NYLL"). Plaintiff alleged that he was paid below the applicable minimum wage rate and that he was not compensated at at least time-and-a-half the applicable minimum wage rate when required to work in excess of 40 hours per week.

Plaintiff alleged that he was employed by Defendants from in or around January 2020 until in or around October 2021. Plaintiff alleged that he regularly worked five days per week and up to ten hours per day, totaling a maximum of fifty (50) hours per week. However, Plaintiff alleged that he was paid $10.00 per hour for his first forty hours and $17.50 per hour for any hours worked in excess of 40 hours per week, both of which fell below the applicable minimum wage rates.

In advance of the mediation, Defendants produced time and pay records, which also included tip payments made to Plaintiff. Although, on their face, the records showed that Plaintiff had been compensated above the minimum wage when accounting for tip payments, Plaintiff maintained some disputes as to the accuracy of the records and also disputed that Defendants were entitled to take a tip credit as to Plaintiff's employment. Specifically, Plaintiff alleged that Defendants were not entitled to take a tip credit as Plaintiff was not provided proper written notice of the tip credit at the outset of his employment and that Plaintiff was required to perform non-tipped work more than 20% of the time during his shifts. As such, Plaintiff alleged that he should have been paid $15.00 per hour up to 40 hours per week and $22.50 per hour for any overtime work performed.

Assuming Defendants were not entitled to apply a tip credit and based on our office's review of the records provided, we believed that Plaintiff could establish approximately $15,000.00 in unpaid wages, not including liquidated damages or statutory penalties. However, if it were determined that Defendants were entitled to apply a tip credit, Plaintiff may not have recovered anything. Given these risks, Plaintiff's preference was for a guaranteed amount through a Court-approved settlement.

### c. Defendants' Position

Defendants believe they complied with applicable law in all respects, but are settling this case to avoid the expense and uncertainty of litigation.

### d. The Settlement Amount is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id.* (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.* (citations omitted). "Generally, there is a strong

presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

The parties have agreed to settle all claims asserted in this matter against Defendants for $17,500.00. The parties believe that this amount is reasonable considering Plaintiff's claims and the records and defenses maintained by Defendants in this matter and the factual disputes that remained between the parties and would not have been resolved until the time of trial. Moreover, the settlement amount was only achieved through a Court-annexed mediation session before a Court-appointed mediator. The parties maintained *bona fide* disputes as to the number of hours worked by Plaintiff and whether Plaintiff qualified as a tipped employee. Settlement early in litigation avoids the time and costs associated with trying to resolve these disputes.

## II.     The Non-Monetary Terms of the Settlement Agreement are Fair and Reasonable

"In FLSA cases, courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)). Moreover, "[i]n the context of an FLSA case in which the Court has an obligation to police unequal bargaining power between employees and employers, such broad releases are doubly problematic." *Martinez v. Gulluoglu LLC*, No. 15 Civ. 2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (quoting *Camacho v. Ess-A-Bagel, Inc.*, No. 14-cv-2592 (LAK), 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014)).

Here, the release in Paragraph 7 of the Settlement Agreement ("Release") is appropriately-tailored to claims under the FLSA and NYLL and their related regulations. The Release does not raise any concerns regarding unequal bargaining power between Plaintiff and Defendants, and the Release is not overbroad such that there is a concern that Plaintiff is releasing any and all possible claims against Defendants, including claims unrelated to the claims asserted in this action.

Furthermore, the Settlement Agreement does not contain any confidentiality provision that would otherwise preclude Plaintiffs from openly discussing their experiences litigating this matter as rejected by *Cheeks*.

As the Release is carefully drafted to comply with Second Circuit case law in FLSA matters and there is no confidentiality clause contained in the Settlement Agreement, the parties' position is that the non-monetary terms of the Settlement Agreement are also fair and reasonable and comport with the standards articulated in *Cheeks*.

## III.    Distribution to Plaintiff and Requested Attorneys' Fees and Expenses

### a. Distribution to Plaintiff

The parties agreed to a global settlement of $17,500.00 to resolve all claims asserted against the Defendants in this action. If the Agreement is approved by the Court, Plaintiff will recover $11,238.00 after the requested attorneys' fees and expenses.

### b. Requested Attorneys' Fees and Expenses

Plaintiff's counsel respectfully requests $643.00 for identifiable expenses, which include:

- the Southern District of New York filing fee in this matter: $402.00
- the costs of service of the Summons and Complaint on all Defendants: $241.00

Plaintiff's counsel respectfully requests one-third of the settlement less the expenses ($16,587.00), or $5,619.00 in attorneys' fees, as agreed upon in the Plaintiff's retainer agreement with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees and expenses in this matter is $6,262.00. The settlement funds broken down into its component parts is as follows:

**Settlement Amount:** $17,500.00
**Attorneys' Expenses:** $643.00
**Net Settlement Amount:** $16,587.00 ($17,500.00 - $643.00)
**Requested Attorneys' Fees:** $5,619.00 ($16,587.00 / 3)
**Total payable to Attorneys:** $6,262.00 ($5,619.00 + $643.00)
**Total payable to Plaintiff:** $11,238.00 ($17,500.00 - $6,262.00)

Plaintiff's attorneys and their client have a retainer agreement that are reduced to writing and is signed by the client. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). Courts in this District typically approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc*., 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016).

This request for attorneys' fees is supported by the work performed by Plaintiffs' counsel throughout the litigation of this matter and the recovery secured through their efforts. Plaintiffs' counsel has zealously advocated for their clients throughout the litigation process and believe that the settlement amount secured is a product of their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiff.

### IV. Closing

In closing, the parties believe that the settlement amount and the terms of the Agreement are fair and reasonable. The settlement was the product of back-and-forth negotiations between experienced counsel with the assistance of the Court-annexed mediation program. As such, we respectfully request that the Court approve the Settlement Agreement and dismiss Plaintiffs' claims against Defendants with prejudice.

We thank the Court for its consideration and remain available to provide any additional information.

                                        Respectfully submitted,

                                        *James O'Donnell*
                                        James O'Donnell, Esq.